_____

GERALD KROUTH,

Petitioner,

DECISION AND ORDER

-vs-

15-CV-6616 CJS

SANDRA AMOIA,

Respondent.
_____

## APPEARANCES

For Petitioner:      Brian Shiffrin
                     Easton Thompson Kasperek Shiffrin, LLP
                     16 West Main Street, Suite 243
                     Rochester, New York 14614

For Respondent:      Thomas B. Litsky
                     Office of the New York State Attorney General
                     120 Broadway
                     New York, New York 100271

## INTRODUCTION

Now before the Court is Gerald Krouth's ("Defendant" or "Krouth") habeas corpus application pursuant to 28 U.S.C. § 2254. The application is denied.

## BACKGROUND

Except as otherwise indicated, the pertinent underlying facts were accurately summarized in Respondent's Memorandum in Opposition (Docket No. [#14]), as follows:

> On February 23, 2008, inside a supermarket in Monroe County, petitioner touched [the buttocks of OA, an eight-year old girl], through her clothes. [OA was in the supermarket with her mother, but her mother did not see Krouth touch OA]. OA later told her mother [about the incident], and the police

interviewed OA two days after the incident.

The police obtained four photos from the market's February 23rd digital video surveillance recording and showed them to OA on February 29th. At the time, OA stated that she was 90 percent certain that a man depicted in three of the four photographs was the man who touched her, but none of the photos showed a clear view of the perpetrator's face. Six days later, OA viewed footage from the market's surveillance video itself and recognized petitioner as the man who touched her.  Petitioner was subsequently arrested and charged with Sexual Abuse in the First Degree and Endangering the Welfare of a Child.

*** 

On August 14, 2008, a Wade hearing was conducted before the Honorable David D. Eagan in the Supreme Court, Monroe County.

***

[The Government's presentation at the Wade hearing established that o]n February 25, 2008, Brighton Police Officer Renee Stickles and Investigator Gary Ciulla met with OA and her mother.  OA described the man who had touched her as a white male with light short blond hair, about the age of her mother.

The next day, Officer Stickles met with the market's manager, Daniel Van Auker, and scanned forty minutes of the surveillance video from the time of the incident.  Mr. Van Auker printed out four photographs from the video depicting two individuals who appeared to fit the description that the police provided him.

On February 29th, at OA's home, and in the presence of OA's mother, Officer Stickles showed OA the four photographs, introduced into evidence as People's Exhibits 1 through 4. Sickles displayed the photographs individually. The officer asked OA to let her know if she recognized anyone, but indicated there was "no pressure" if she did not recognize anyone. People's Exhibit 1 depicted an individual pushing a shopping cart by the market's entrance. People's Exhibits 2 and 4 depicted various individuals in the market's back aisle by the meat case. And People's Exhibit 3 depicted an individual by the area where the pharmacy leads to the produce department.

OA indicated that the person in People's Exhibit 1 was not the man that she had encountered in the market. However, she was "90 percent sure" and "pretty certain" that the man in the remaining three photos was the person who had touched her.

Thereafter, the police spoke to Mr. Van Auker and made arrangements to meet at the market in order for OA to view the actual surveillance video. In anticipation of that meeting, Van Auker "cued up" the video footage so that it was ready to be played. OA and her mother, met Officer Stickles, Investigator Ciulla, and Mr. Van Auker at the market and to view the market's surveillance video. Officer Stickles told OA that she would be shown video footage and to let her know if she recognized anyone. The first video played depicted the market's entrance. OA had no reaction when she viewed that first video. Thereafter, OA saw a second video that depicted the self-checkout area. That second video footage was not used to generate the four photos that Van Auker had initially provided to the police, which had been shown to OA. During the playback of the second video footage, OA said, "that's him." In response, Investigator Ciulla asked OA if that was the person who touched her, and OA replied, "Yes."

Later that day, Investigator Ciulla contacted Rochester Police Officer Robert Jobe at the Sex Offender Management Unit. Officer Jobe knew petitioner for years and confirmed that he was the man depicted in the video of the market's self-checkout area.

Petitioner called no witnesses [to testify at the *Wade* hearing.]
***

Following the parties' submissions of post-hearing memoranda of law, the court denied petitioner's [suppression] motion by Decision and Order dated March 20, 2009. The court credited the testimony of the People's witnesses, and held that neither the photos themselves, nor the manner in which they were shown to OA, were unduly suggestive. The court found further that there was no evidence that the presence of OA's mother influenced OA's identification. Next, the court held OA's viewing of the market's surveillance video was "not an identification procedure subject to the requirements of C.P.L. § 710.30." The court relied on *People v. Gee*, 286 A.D.2d 62 (4th Dep't 2001), in which the Appellate Division, Fourth Department, found that

for a witness to point out an unknown criminal actor on a surveillance videotape is "akin to giving a description of the appearance of that individual at the time of the crime . . . [and] such observations or descriptions are not within the ambit of CPL 710.30." In any event, the court found that even if the identification procedure fell within the ambit of C.P.L. § 710.30, "the procedures employed by the police were not so unnecessarily suggestive as to create a substantial likelihood of misidentification." (*citing Simmons v. United States*, 390 U.S. 377, 385 (1968)). Finally, the court found that petitioner's case was not like *People v. Powell*, 105 A.D.2d 712 (2d Dep't 1984), *aff'd*, 67 N.Y.2d 661 (1986), in which a witness was shown a single photograph to identify a defendant.

***

On January 4, 2010, petitioner pleaded guilty to Sexual Abuse in the First Degree, in return for a prison term of six years and six years post-release supervision. Petitioner agreed to be sentenced as a second violent felony offender, and waived his right to appeal.

With regard to the appeal waiver, [prior to Petitioner's plea] the court explained that by waiving his right to appeal, petitioner would be unable to "go a higher court" and argue that the District Attorney, defense counsel, or the Court made a mistake. The court advised petitioner that by that waiver, he "would be withdrawing any and all motions . . . whether [the court] . . . ruled on them or not." Petitioner confirmed that he understood, and he agreed to sign a written appeal waiver form.

With regard to the knowing, intelligent, and voluntary nature of his plea, petitioner confirmed that he had sufficient time to confer with counsel concerning his decision to plead guilty, and he was satisfied with his attorney's work. Petitioner confirmed that he understood that by pleading guilty, he was giving up his right to a jury trial, to confront and cross-examine the witnesses against him, to testify on his own behalf and to call witnesses if he chose to. Petitioner also provided a factual basis for his guilty plea, stating that on the afternoon of February 23, 2008, inside the Tops Supermarket, on Clinton Avenue, in Monroe County, he touched [OA] on her buttock. Petitioner admitted that the girl was under 11 years old and that he touched her for his own sexual gratification. The court accepted petitioner's guilty plea and adjourned petitioner's case for sentencing.

***

Before sentencing, the prosecutor notified the court by letter that the court was required to impose a post-release supervision term of at least ten years, rather than the promised six-year period, because petitioner was a second child sexual assault felony offender.

At the February 5, 2010 sentencing proceedings, defense counsel indicated that petitioner did not want to withdraw his guilty plea, and [Petitioner] agreed to be sentenced to ten, rather than six years of post-release supervision. In response to the court's questions, petitioner confirmed that he had reviewed the prosecutor's letter with his attorney and that he agreed to the imposition of a ten year post-release supervision term. Petitioner admitted his relevant criminal history and periods of incarceration, and the court adjudicated petitioner a second child sexual assault felony offender.

In accordance with petitioner's negotiated plea, the prosecutor provided a written appeal waiver form to petitioner to review with his attorney and sign. After conferring with petitioner, defense counsel stated that petitioner understood that he was waiving his right to appeal, and that petitioner had signed the waiver of appeal form.

The [appeal waiver] form provided, in relevant part, that petitioner waived his right to appeal the judgment of conviction and any decisions or rulings by the court. The paragraph immediately above petitioner's signature, states "I make this waiver knowingly and voluntarily after having been fully advised of my rights and after having had a full and fair opportunity to discuss any issue or question I have with my attorney."

After petitioner signed the appeal waiver form, the court sentenced petitioner to an indeterminate prison term of six years and ten years post-release supervision.

***

Petitioner [appealed and] filed [both] a counsel[-prepared brief] and *pro se* supplemental brief in the Appellate Division, Fourth Department.

Petitioner argued that: (1) his waiver of appeal was invalid, in relevant part, because: (a) the court failed to explain that he did not automatically forfeit his

right to appeal the suppression ruling by pleading guilty; and (b) the court did not ask him any questions about his understanding of the appeal waiver form that he signed; and (2) the identification procedure was unduly suggestive and the identification evidence should have been suppressed because: (a) the police showed OA three single photos, each depicting petitioner, and thereafter showed OA the video from which the photos were generated; and (b) Investigator Gary Ciulla improperly asked OA during video playback whether a person depicted on the video was the man who had touched her. In his *pro se* supplemental brief petitioner argued that identification procedure was unduly suggestive because OA's mother was present when OA viewed the photos and video.  The People filed an opposing brief.

The [New York State Supreme Court,] Appellate Division, Fourth Department, held that petitioner's waiver of the right to appeal was enforceable and therefore precluded petitioner from challenging the hearing court's suppression ruling.[1]  The Appellate Division further found that the court properly denied petitioner's suppression motion pursuant to *People v. Gee*, 276 A.D.3d at 72-73. [*People v.*] *Krouth*, 115 A.D.3d [1354,] 1354 [(4th Dept. 2014)].  Petitioner sought leave to appeal all issues raised on direct appeal.  The People opposed that application. The judge of the New York Court of Appeals denied leave. [*People v.*] *Krouth*, 23 N.Y.3d [1064 (2014)].

***

In the [subject] *pro se* habeas petition filed pursuant to 28 U.S.C. § 2254, petitioner raise[d] the following claims: (1) his guilty plea was not entered knowingly, intelligently and voluntarily (Pet. Ground One); (2) his waiver of

---

[1]*See, People v. Krouth*, 115 A.D.3d 1354, 1354–55, 982 N.Y.S.2d 678 (2014)("We conclude that the waiver of the right to appeal is enforceable and that it therefore precludes defendant from challenging the court's suppression ruling. "A waiver of the right to appeal is effective only so long as the record demonstrates that it was made knowingly, intelligently and voluntarily" (*People v Lopez*, 6 NY3d 248, 256 [2006]). Here, the court "engage[d] the defendant in an adequate colloquy to ensure that the waiver of the right to appeal was a knowing and voluntary choice" (*People v James*, 71 AD3d 1465, 1465 [2010] [internal quotation marks omitted]; *cf. People v Adger*, 83 AD3d 1590, 1591 [2011], *lv denied* 17 NY3d 857 [2011]), and informed him that the waiver was a condition of the plea agreement (*cf. People v Williams*, 49 AD3d 1281, 1282 [2008], *lv denied* 10 NY3d 940 [2008]). The record also establishes that defendant "indicated that he had spoken with defense counsel and understood that he was waiving his right to appeal as a condition of the plea" (*People v Dunham*, 83 AD3d 1423, 1424 [2011], *lv denied* 17 NY3d 794 [2011]). Finally, the court made clear to defendant that the right to appeal was separate and distinct from the rights automatically forfeited upon plea (*see Lopez*, 6 NY3d at 256; *see also People v Bradshaw*, 18 NY3d 257, 264 [2011])").

appeal was invalid because the court failed to: (a) explain that he did not automatically forfeit his right to appeal the suppression ruling by pleading guilty; and (b) ask him any questions about his understanding of the appeal waiver form that he signed (Pet. Grounds One and Three); and (3) the identification procedure was unduly suggestive and identification evidence should have been suppressed because: (a) the police showed OA four photos, which constituted "single photograph" show-ups, to identify a suspect; (b) the police instructed Daniel Van Auker, the supermarket manager, to just play the portion of the market's surveillance video from which the four photos were generated; (c) OA's mother was present when OA viewed the photos and video; and (d) Detective Ciulla improperly asked OA a leading question, whether a man depicted in a crime scene video was the man who touched her (Pet. Grounds Two and Four).

Respondent's Memorandum in Opposition [#14] at pp. 3-11 (citations to record omitted).

On February 26, 2016, Respondent filed opposition papers [#14][#15], challenging each aspect of the habeas petition. Most significantly, Respondent argued that "[t]he Appellate Division's finding that [Krouth's] waiver of the right to appeal was enforceable, constitutes an adequate and independent state law ground barring habeas relief of [Krouth's] suppression claim."[2] Respondent also pointed out that the claim that Petitioner's plea was not knowing and voluntary was unexhausted.

On July 21, 2016, the Court appointed CJA counsel to represent Petitioner, and on September 23, 2016, Petitioner's counsel filed a traverse/reply [#28]. Petitioner's counsel concedes that the claim, that the plea was not knowing and voluntary, is unexhausted, and withdraws that claim. However, counsel asserts, first, that Krouth's appeal waiver does not constitute and adequate and independent state ground precluding this Court's review of the state court's suppression ruling; and, second, that the state court's ruling on the

---

[2]Docket No. [#15] at p. 3, ¶ 6.

suppression issue amounts to a "ruling that was contrary to, or involved an unreasonable application of, clearly established Federal law," within the meaning of 28 U.S.C. § 2254(d)(1). The Court disagrees with this first argument, and therefore does not reach the second argument.

## DISCUSSION

Krouth brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled:

> [A] federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).
>
> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.
>
> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11,

2018) (Koeltl, J.) (citations and internal quotation marks omitted).

However, it is equally well-settled that federal courts will not, in a habeas petition, review a state court decision that rests on an adequate and independent state-law ground:

> [F]ederal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court.
>
> ***
>
> If a state court decision does rest on independent and adequate state grounds, a federal court may only consider the procedurally defaulted claim if a petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice.

*Williams v. Lee*, No. 14CIV2981VBJCM, 2017 WL 4685273, at *9–10 (S.D.N.Y. Aug. 8, 2017) (citations and internal quotation marks omitted), *report and recommendation adopted*, No. 14 CV 2981 (VB), 2017 WL 4685105 (S.D.N.Y. Oct. 17, 2017).

Significantly, determining whether a state court applied an independent and adequate state ground to bar review of a claim is not the same thing as determining whether the state court correctly applied its own state law:

> Our function on habeas review of a state court proceeding is not to reenact the proceeding or peer over the shoulder of the state court judge ruling on questions of state law. Instead, federal court review of a state's application of its own rules is deferential. We recently reaffirmed that we are to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct. We therefore will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support

the judgment.

> [Where the state court ruling is independent of the federal right being asserted, we] consider only whether that finding is an adequate ground for decision. If the state ground for decision is adequate, a federal habeas court will not review a claim rejected by the state court. Conversely, if the state ground for decision is inadequate, it "should not operate to bar federal review.
>
> We generally assess the adequacy of a state ground of decision by examining whether the rule upon which the state court relied is firmly established and regularly followed, keeping in mind that, in exceptional cases, the exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question. To determine whether [a particular] case involves an exorbitant misapplication of a state rule, we look to see if the state's application serves a legitimate state interest.

*Downs v. Lape*, 657 F.3d 97, 101–02 (2d Cir. 2011) (citations and internal quotation marks omitted).

The Appellate Division, Fourth Department, found that Krouth's waiver of the right to appeal was enforceable (because it was knowing, intelligent and voluntary), and therefore precluded him from challenging the ruling by Supreme Court, Monroe County, denying the suppression motion. Such a ruling -- denying appellate review based upon a waiver of the right to appeal -- is generally viewed as an adequate and independent state ground for denying habeas relief. *See, e.g., Gilliam v. Superintendent*, No. 9:13-CV-0788, 2015 WL 114344, at *9 (N.D.N.Y. Jan. 8, 2015) ("[T]he Fourth Department's denial of petitioner's appeal, based on the waiver of his right to appeal, approved during his plea colloquy and formalized in writing at the time of sentencing, also bars consideration of all of petitioner's habeas claims arising from the alleged fraud involving his *Miranda* waiver

form.") (collecting cases recognizing that a valid waiver of the right to appeal is an adequate and independent state ground); *see also, Alvarez v. Yelich*, No. 09-CV-01343 SJF, 2012 WL 2952412, at *5 (E.D.N.Y. July 17, 2012) ("Courts in this circuit have consistently held that a petitioner's waiver of the right to appeal is an adequate and independent state ground for denying habeas corpus relief.") (collecting cases).

Krouth nevertheless contends that the "adequate and independent state-law ground bar" does not apply here, because

> the state court's holding that Mr. Krouth's waiver of appeal (as to which the court failed to distinguish rights forfeited by virtue of a guilty plea from the voluntary waiver of the right to appeal) precluded review of this issue *was not a firmly established and regularly followed state practice[.]*

Reply/Traverse [#28] at p. 2 (emphasis added). Later in his reply/traverse brief, Krouth re-formulates this argument, stating: "Since New York does not regularly find waivers to be valid when, as in Mr. Krouth's case, the record fails to establish that [he] understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty, there is not a firmly established and regularly followed New York practice[.]" *Id*. at p. 15.

In this regard, however, the Court believes that Krouth is conflating the question of whether New York's "appeal waiver bar" is "firmly established and regularly followed" with the separate question of whether the particular panel of the Appellate Division, Fourth Department, which reviewed his appeal, correctly found that his waiver was knowing, intelligent and voluntary.

Notably, in that regard, in arguing that the "appeal waiver bar" is not "firmly established and regularly followed," Krouth states only that even validly-executed appeal

11

waivers do not necessarily bar all issues on appeal, such as claims for ineffective assistance of counsel. However, Krouth is not raising an ineffective assistance claim, and the fact that certain types of claims (which are not at issue in this case) are typically excluded from appeal waivers does not mean that New York's "appeal waiver bar" is not firmly established and regularly followed when it comes to suppression/identification issues.[3] To the contrary, New York courts regularly enforce appeal waivers to bar appeals of suppression issues. *See, e.g., People v. Zapata*, 158 A.D.3d 778, 68 N.Y.S.3d 757 (2d Dept. 2018) ("The defendant's valid waiver of his right to appeal bars his challenge to the County Court's suppression rulings.").

Krouth's argument (that the denial of his appeal was not based on an adequate and independent state ground because the Appellate Division, Fourth Department erred in finding that his waiver of the right to appeal was knowing, intelligent and voluntary), if accepted, would mean that in every habeas case in which a respondent argued that a petitioner's claim was barred by an adequate and independent state ground, the federal district court would be required to consider whether the state court correctly applied its own law. However, as already noted, the Second Circuit has clearly stated that is not the federal court's function. *See, Downs v. Lape*, 657 F.3d 97, 101–02 (2d Cir. 2011) ("[W]e are to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct.") (citations and internal quotation marks omitted).

---

[3]Claims of ineffective assistance of counsel involving a plea waiver obviously present a different case, because "[t]ypically, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, such as the plea agreement[.] *U.S. v. Cleveland*, No. 14–4389–cr, 643 F.App'x 66, 67 (2d Cir. Mar. 17, 2016) (*citing Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir.2002); internal quotation marks omitted).

Here, Krouth has not attempted to show either that the enforcement of appeal waivers to suppression issues falls outside of the state's usual practice, or that such practice is not justified by legitimate state interests. The Court therefore finds that Krouth's § 2254 application is barred by an adequate and independent state ground.

CONCLUSION

Krouth's application under 28 U.S.C. § 2254 is denied. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Krouth has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:      Rochester, New York
           March 28, 2018

                  ENTER:

                  /s/ Charles J. Siragusa_____
                  CHARLES J. SIRAGUSA
                  United States District Judge